IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 22, 2005 Session

## LEONARD V. CATALANO v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2001-A-453   Steve Dozier, Judge**

————————————

**No. M2005-00070-CCA-R3-PC - Filed January 3, 2006**

————————————

The petitioner, Leonard V. Catalano, pled guilty to three counts of aggravated sexual battery.  As a result, he was sentenced to thirty-two years incarceration.  His sentence was affirmed by this Court on direct appeal.  See State v. Leonard V. Catalano, No. M2001-03039-CCA-R3-CD, 2003 WL 21877933 (Tenn. Crim. App. at Nashville, July 9, 2003), perm. app. denied, (Tenn. Nov. 24, 2003).  The petitioner subsequently sought post-conviction relief, alleging that his guilty plea was not knowing and voluntary due to ineffective assistance of counsel.  Following a hearing, the post-conviction court denied the petition. The petitioner appealed.  For the following reasons, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Leonard V. Catalano.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Amy Eisenbeck, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

In January of 2001, the petitioner was indicted on eighteen counts of aggravated sexual battery, involving three separate juvenile victims.  Pursuant to a settlement with the State, the petitioner pled guilty to three counts of aggravated sexual battery in July of 2001, each involving a different victim.  The length and manner of service of the sentence was to be determined by the trial court at a sentencing hearing.  The remaining charges were dismissed.  During the plea hearing, the prosecutor stated that if the case had gone to trial, the State would have proven that the petitioner

molested three young girls: his daughter, his "step-granddaughter," and one of his daughter's close friends. At the time of the offenses, the petitioner had been divorced from the mother of his daughter for an extended period of time without exercising visitation rights with his daughter. The petitioner began visitation with his daughter in the fall of 1999, when the child was four years old. The daughter was initially reluctant to spend time with the petitioner, so she often invited another child to join her at the petitioner's home. The petitioner admitted that with this access to the victims, he had touched all three of the victims' vaginal areas with his hand. Furthermore, the petitioner acknowledged oral vaginal contact with his daughter and step-grandaughter. The incidents began in the fall of 1999 and lasted until the fall of 2000, during which time the victims ranged in age from four to six years.

At a sentencing hearing, the trial court sentenced the petitioner to twelve years on count one, ten years on count nine, and ten years on count thirteen. The trial court ordered the sentences to run consecutively for an effective thirty-two-year sentence. On direct appeal, the petitioner argued that his sentences should not have been ordered served consecutively and that his sentences should not have been set above the minimum in the range. This Court disagreed, affirming the petitioner's sentence. State v. Leonard Catalano, 2003 WL 21877933, at *5. The Supreme Court denied permission to appeal on November 24, 2003.

Subsequently, on August 24, 2004, the petitioner filed a pro se petition for post-conviction relief, alleging, among other things, that his guilty plea was not knowing and voluntary due to ineffective assistance of counsel. Counsel was appointed for the petitioner and an amended petition was filed.

## Post-Conviction Hearing

The post-conviction court held a hearing on the petition on November 19, 2004. At the hearing, the petitioner testified that prior to the guilty plea hearing trial counsel failed to keep him apprised of the status of his case. The petitioner stated that he was scared and did not know what to say or do about his case. The petitioner claimed that trial counsel told him if he went to trial he could end up with a thirty-two-year sentence, but that if he pled guilty, he might get a lesser sentence.

The petitioner also claimed that trial counsel did not discuss discovery with him. The petitioner stated that he visited trial counsel's office on several occasions and while there, listened to audio tapes of conversations between him and police officers, but that trial counsel would be doing something else rather than listening to the tapes. Further, the petitioner claims that trial counsel told him "you're wasting my options." The petitioner was also disappointed that trial counsel never tried to suppress his statements to the police.

The petitioner testified that trial counsel failed to contact any of the character witnesses that he provided and claimed that he would have rather gone to trial.

On cross-examination, the petitioner admitted that at the time he made his first statement to the police, he was not under arrest and actually allowed the police officer to come into his home. Further, the petitioner admitted that he told the police that he touched the private parts of two of the victims, but contended that he was "pressed" into saying it. However, the petitioner admitted that he gave a similar account of the events during his mental health interview.

The petitioner also admitted that trial counsel told him his chances at trial were poor, due to his tape-recorded statements to the police. However, the petitioner continued to assert that trial counsel gave him little choice about going to trial or pleading guilty.

James Mulholland testified that the petitioner was his hair stylist and cut his hair for approximately ten years. Mr. Mulholland stated that he liked the petitioner and admired the way that the petitioner cared for his elderly father.

Lieutenant David Imhof of the Metropolitan Nashville Police Department testified that during the investigation of the victims' allegations, he went to the petitioner's home to interview him. Upon his arrival, Lt. Imhof informed the petitioner that he was not under arrest, but that he wanted to talk to him about an incident concerning his daughter. Lt. Imhof informed the petitioner that he did not have to talk and could end the conversation at any time. The petitioner consented to the conversation and gave a statement essentially admitting the crimes. The petitioner was arrested the following day.

Trial counsel testified that he had been an attorney since 1983 and had practiced criminal law since 1993. Trial counsel remembered that the petitioner came to see him at his office. According to trial counsel, the two met four or five times at his office and four additional times either at jail or in court. Trial counsel obtained discovery materials from the State, reviewed the petitioner's statements, researched case law and came to the conclusion that a motion to suppress would be fruitless.

Trial counsel informed the petitioner that due to the taped statements, a trial was unadvisable, especially in light of the interviews of the victims conducted by psychologists at Our Kids Center. Trial counsel informed the petitioner that he would be better off pleading to three counts of aggravated sexual battery, with a possible sentence of thirty-six years, rather than going to trial on all eighteen counts.

Trial counsel informed the post-conviction court that his standard practice in plea arrangements was to read each and every portion of the plea agreement aloud to his client, in anticipation that he would have to testify about the review of the agreement at a subsequent post-conviction hearing. Trial counsel remembered following his standard practice with the petitioner, going over every detail of the plea agreement prior to the plea hearing.

Trial counsel stated that after the plea hearing, the petitioner provided him with a list of character witnesses for the sentencing hearing. Trial counsel testified that he had difficulty in

locating the people on the list, even sending his paralegal to the jail on two occasions to get additional information from the petitioner about the witnesses. Trial counsel remembered that a number of witnesses were the petitioner's clients, who could not offer much more than to say that the petitioner was a good hair stylist. Trial counsel considered using the petitioner's pastor as a witness, even issuing a subpoena for her to testify at the sentencing hearing, but during conversations with her prior to the hearing, trial counsel determined that the pastor was hedging on her testimony and, therefore, chose not to call her as a witness. Trial counsel also stated that he contacted the petitioner's older daughter about testifying, but that she refused, stating that the petitioner had also molested her as a young child.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In a written order, the post-conviction court denied the petition, determining that the petitioner failed to satisfy his burden to establish a basis for post-conviction relief. Specifically, the post-conviction court found:

> The petitioner first argues that trial counsel failed to inform the petitioner of the nature and consequences of the plea and failed to adequately meet with him to discuss the case. [Trial counsel] testified that he met with the petitioner eight to nine times. Four to five of these were at his office, others were at court and once at the jail before the sentencing hearing. [Trial counsel] testified that he discussed the nature of the charges for which the petitioner was facing and what his options were. The options were a possible plea with a recommended sentence, an open plea with a sentencing hearing, or a trial. The petitioner testified that [trial counsel] did go over the discovery with him as well as the taped statements that he had made. The petitioner states that he was "scared out of my mind." However, the petitioner offered no proof at the hearing as to why this was. The Court accredits the testimony of [trial counsel] and therefore finds that this issue is without merit.
>
> The petitioner next argues that trial counsel misrepresented his experience with criminal cases. The petitioner testified that he had heard that [trial counsel] practiced in real estate. [Trial counsel] testified that he practiced from 1983-1993 at a firm and handled banking and real estate law. [Trial counsel] further testified that he started his own practice in 1993 and that from that time his primary practice was criminal defense. [Trial counsel] testified that he had represented others who were charged with child sex crimes. The Court finds that [trial counsel] did not misrepresent his experience in criminal cases to the petitioner. Therefore, the Court finds that this issue is without merit.
>
> The petitioner next argues that trial counsel failed to file a Motion to Suppress the statements made to Detective David Imhoff. The petitioner, [trial counsel] and Detective Imhoff all testified that the petitioner was not in custody at the time of the incriminating statement given at the defendant's residence. Detective Imhoff testified that at this taped interview, he told the petitioner that he was not under

arrest, that he did not have to answer any questions if he did not want to and that he could stop at an time. The petitioner then made incriminating statements to Detective Imhoff. The next day, the petitioner was arrested. At this time, Detective Imhoff read the petitioner his Miranda rights. [Trial counsel] and the petitioner testified that they received an audio copy of the statements and that they listened to them. [Trial counsel] testified that after researching Tennessee and federal cases on Westlaw, he was not able to find a basis in which to file a Motion to Suppress the statements made by the petitioner . . . . The Court accredits the testimony of [trial counsel] and finds that this issue is without merit.

The petitioner next argues that trial counsel was ineffective by failing to properly and adequately develop and investigate possible defenses . . . . [Trial counsel] testified that during his meetings with the petitioner he discussed possible defenses with the petitioner. After listening to the tapes [sic] statements and reviewing the discovery, [trial counsel] determined that there were no defenses. The Court finds that the defendant has offered no proof as to what any further investigation would had [sic] yielded and therefore, cannot meet the prejudice prong of the analysis in Strickland v. Washington, 466 U.S. at 687-697.

The petitioner next argues that trial counsel was ineffective by failing to interview the state's witnesses and the petitioner's witnesses. [Trial counsel] testified that he felt he would not be not be [sic] successful in attempting to interview the victims in the case. The petitioner testified that he gave [trial counsel] a list of character witnesses who could potentially testify for the petitioner at the sentencing hearing. [Trial counsel] testified that he attempted to contact these witnesses, but many of the addresses and phone numbers were no longer good. [Trial counsel] further testified that those witnesses he was able to interview would not be favorable to the petitioner. Therefore, no witnesses testified on behalf of the petitioner. The Court accredits the testimony of [trial counsel] and therefore finds that this issue is without merit.

The petitioner next argues that trial counsel was ineffective by failing to attack the sentences imposed as a violation of Apprendi v. New Jersey. Specifically, the petitioner argues that the petitioner's Sixth Amendment right to a jury trial was violated when the sentences were enhanced and ordered to run consecutively. The Tennessee statutory scheme was not directly in issue when the Apprendi decisions were rendered. Absent language to the contrary, the principles set forth in Apprendi are not to be applied retroactively thus not immediately operating to invalidate any sentence, including the petitioner's sentence. Furthermore, under Tenn. Code Ann. § 40-35-114, the Court can consider and place weight upon "abuse of private trust" as an enhancement factor. The petitioner has admitted to being the natural father of one of the victims and the step-grandfather of one of the other victims. Therefore, the Court did not consider facts other than those admitted by the defendant. The

Court can and did place great weight on this factor and did not sentence the petitioner above the maximum sentence . . . . Under Tenn. Code Ann. § 40-35-115, the Court may order multiple offenses to run consecutively if by a preponderance of the evidence if "the defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims." The Court considered this statute and found that the factors weighed in favor of running the sentences consecutively. As the Court sentenced the petitioner as allowed by statutory law, counsel was not ineffective for failing to attack the sentences. Therefore, the Court finds that this issue is without merit.

The petitioner appealed the post-conviction court's denial of the petition. On appeal, the petitioner argues that the post-conviction court erred in denying his motion for a continuance, erred in determining that the petitioner received effective assistance of counsel and erred in enhancing his sentence in violation of Blakely v. Washington, 542 U.S. 296 (2004).

Analysis

Denial of Continuance

Initially, the petitioner complains that the trial court erred by denying a continuance for the post-conviction evidentiary hearing. Immediately prior to the hearing, the petitioner's counsel informed the court that the petitioner requested that counsel seek a continuance. The petitioner told the court that he was not prepared to go forward with the hearing, without further explanation. The post-conviction court denied the request for the hearing. The petitioner contends that the denial of the continuance was an abuse of discretion and prejudiced the petitioner in that there were only three months from the filing of the petition for post-conviction relief until the date of the hearing, prohibiting the petitioner from fully preparing for the hearing. The State disagrees, arguing that the post-conviction court did not abuse its discretion in denying the continuance.

The granting of a continuance rests within the sound discretion of the trial court. State v. Odom, 137 S.W.3d 572, 589 (Tenn. 2004). We will reverse the denial of a continuance only if the trial court abused its discretion and the defendant was prejudiced by the denial. State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995). In order to show prejudice, the defendant must demonstrate that a different result might reasonably have been reached if the trial court had granted the continuance or that the denial of the continuance denied the defendant a fair trial. Id. Moreover, a defendant who asserts that the denial of a continuance constitutes a denial of due process or the right to counsel must establish actual prejudice. Odom, 137 S.W.3d at 589.

The petitioner provided no proof at the hearing as to how he would be prejudiced if the post-conviction court refused to grant the continuance. Moreover, the petitioner was represented by

counsel, who granted that he was prepared to go forward with the hearing. The petitioner has failed to prove that the post-conviction court abused its discretion in this regard. This issue is without merit.

## Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This

Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the petitioner argues that trial counsel was ineffective because he failed to effectively communicate with the petitioner. Further, the petitioner argues that he suffered prejudice by entering into an unknowing and unintelligent guilty plea.

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970). As stated above, in order to successfully challenge the effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. Under Strickland v. Washington, 466 U.S. 668, 694 (1984), the petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the State standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. Boykin, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

The transcript from the plea hearing herein reveals that the trial court carefully and correctly informed the petitioner regarding his constitutional rights, and specifically asked if he understood that he was waiving those rights by pleading guilty. The petitioner responded in the affirmative. Further, he stated that he understood the plea agreement and the significance of the guilty plea

hearing, and was entering his guilty plea voluntarily. The petitioner also acknowledged that he was satisfied with counsel's representation. Accordingly, we determine that the petitioner's guilty plea was knowing and voluntary.

The petitioner claims that trial counsel was ineffective because he failed to effectively communicate with the petitioner. Specifically, the petitioner contends that trial counsel "did not fully interview and investigate [the petitioner's] witnesses," and did not "fully explain what was going on in the case to [the petitioner] which resulted unknowing and involuntary guilty plea" because the petitioner was unable to "fully evaluate potential trial/settlement options." We have already determined that the petitioner's guilty plea was knowing and voluntary. Furthermore, the record does not preponderate against the finding that trial counsel was effective. Explicit in the post-conviction court's findings and conclusions was that the court accredited the testimony of trial counsel rather than that of the petitioner. As stated previously, credibility determinations are entrusted to the trial court. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The post-conviction court accepted as true the testimony of trial counsel concerning the circumstances of the plea and the conversations leading up to that decision, including the fact that trial counsel met with the petitioner and discussed not only the discovery materials, but the plea offer and the ramifications of pleading guilty. The record not only supports the determination of the post-conviction court, but the petitioner has also failed to establish that he suffered any prejudice as a result of trial counsel's representation and failed to show that there was a reasonable probability that but for trial counsel's errors he would not have pleaded guilty and would have gone to trial. This issue is without merit.

<u>Violation of Blakely v. Washington</u>

Lastly, the petitioner argues that the trial court gave him an "excessive sentence under the facts and circumstances of this case considering the mandate of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004)." Specifically, the petitioner argues that while the Tennessee Supreme Court recently held in <u>State v. Gomez</u>, 163 S.W.3d 632 (Tenn. 2005), that <u>Blakely</u> does not apply to Tennessee's Sentencing Guidelines, the <u>Gomez</u> decision "does not pass constitutional muster under the United States Constitution's Due Process, Equal Protection and/or Separation of Powers Clauses." The State contends that the petitioner waived the issue for failure to raise it at the sentencing hearing.

In <u>Gomez</u>, the court determined that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury nor admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), <u>United States v. Booker</u>, ___ U.S. ___, 125 S.Ct. 738 (2005), or <u>United States v. FanFan</u>, the case consolidated with <u>Booker</u>, because "[t]he Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." <u>Gomez</u>, 163 S.W.3d at 661. As a result of the decision in <u>Gomez</u>, the appellant's issue is without merit. Furthermore, the petitioner's failure to raise this issue at the

sentencing hearing constitutes a waiver of the issue.  <u>Id.</u>  Moreover, and as noted by the post-conviction court, the petitioner admitted the facts used to enhance his sentence at the sentencing hearing.  This issue is without merit.

<u>Conclusion</u>

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE